UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No.: _____

**ALEXANDRU FLOREA** and **STEPHEN J.**
**CAMPION**, individually and behalf of all
others similarly situated,

      Plaintiffs,

v.

**HASH MAP LABS, INC d/b/a APP**
**ACADEMY**, a Delaware Corporation;
**KUSH PATEL**, an Individual,

      Defendants.

_____/

<u>**CLASS ACTION**</u>

## <u>COMPLAINT FOR VIOLATIONS OF 18 U.S.C. §1962(c)</u>

Plaintiffs by and through their attorneys, bring this action on behalf of themselves and all others similarly situated, against HASH MAP LABS, INC d/b/a APP ACADEMY ("Defendant APP") and KUSH PATEL ("Defendant PATEL"). Plaintiffs allege the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to them.

## NATURE OF THE ACTION

1.      The Defendants knowingly and intentionally lured the Plaintiffs, along with hundreds of other student-victims, into a nationwide fraudulent scheme, falsely representing that enrollment in an expensive online software engineering coding bootcamp would guarantee job placement upon completion.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims arise under the RICO Statute, 18 U.S.C. § 1962. The Court also has diversity jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"), as to the named Plaintiffs and every Class Member, because the proposed Class contains more than 60 members, the aggregate amount in controversy exceeds $5 million, at least one plaintiff is a resident from a state that is different from at least one defendant and Class Members reside across the United States and are therefore diverse from Defendants.

3.      This Court has personal jurisdiction over the Defendants because they have established significant minimum contacts with this State and intentionally availed themselves of the laws of the United States, including Florida, by transacting substantial business within this State and this District. Their actions

included, but were not limited to, promoting, marketing, advertising, contracting and transacting business online to consumers in Florida and nationwide.

4.    Venue is proper under 18 U.S.C. § 1965(a), because Defendants are subject to personal jurisdiction in this District as alleged above.

**PLAINTIFFS**

5. Plaintiff, ALEXANDRU FLOREA ("FLOREA"), entered into an individual contract with Defendant APP, enrolling as a part-time online student with a program scheduled to begin on November 7, 2022, and conclude on November 7, 2023.

6.  Plaintiff, STEPHEN J. CAMPION ("CAMPION"), entered into a contract with Defendant APP, turning down other educational opportunities to enroll in the program as originally structured. However, just weeks into the program, Defendants made substantial and unexpected alterations to the course structure. Despite repeated assurances from Defendants that the changes were meant to improve the program, subsequent waves of modifications were followed by layoffs and staffing shortages. From the outset, the program was marred by questionable conduct, leading to frustrations among students, as evidenced by the growing disillusionment reflected in comments such as '$36,000 tech school, everybody' during Zoom sessions. The situation was further exacerbated by misleading statements and gaslighting from one of the Defendants'

3

representatives, where CAMPION became increasingly dissatisfied with the ongoing changes to the program and the lack of transparency from Defendant APP.

## DEFENDANTS

7.    KUSH PATEL is the founder and former CEO of Defendant APP and currently serves as the board chairman.

8.    HASH LABS, LLC, d/b/a APP ACADEMY is a Delaware corporation base in California and a coding bootcamp that offers intensive, full-stack software engineering programs online and in-person.

## COMMON FACTUAL ALLEGATIONS

9.    The Plaintiffs FLOREA and CAMPION entered into individual contracts with Defendant APP based on representation that the program would be delivered in a specific structure and within a defined timeframe. **(See Exhibit "A")**

10.    Defendant APP promoted its program as a meticulously designed, industry-standard software engineering bootcamp, featuring clear timelines and outcomes. The academy also assured guaranteed job placement or career support upon successful completion of the program.

11.    Defendant APP employs a deferred tuition model in which students do not pay any fees upfront. Instead, they are required to pay a percentage of their salaries once they obtain employment after completing the program.

12. If students choose to pay their tuition upfront instead of deferring it, the total tuition is reduced to $22,000, down from the original $36,000.

**Table 1: Illustrative Payment Options**

| Annualized Income | Upfront Payment Plan Course Tuition | ISA Payment Plan Maximum Course Tuition | Deposit | Deferred Tuition | Monthly Payment Amount (15% of Monthly Income) | Total Number of Payments (Maximum of 36 Payments) | Total Amount of Payments* |
|---|---|---|---|---|---|---|---|
| **$120,000** | $22,000 | $36,000 | $3,000 | $33,000 | $1,500 | 22 | $33,000 |
| **$100,000** | $22,000 | $36,000 | $3,000 | $33,000 | $1,250 | 27 | $33,000 |
| **$80,000** | $22,000 | $36,000 | $3,000 | $33,000 | $1,000 | 33 | $33,000 |
| **$60,000** | $22,000 | $36,000 | $3,000 | $33,000 | $750 | 36 | $27,000 |
| **$50,000** | $22,000 | $36,000 | $3,000 | $33,000 | $625 | 36 | $22,500 |
| **$40,000** | $22,000 | $36,000 | $3,000 | $33,000 | $0 | 0 | $0 |

*Assumes annual income stays constant over the payback period*

13. After the start of the program, Defendant APP made substantial and unexpected changes to the course structure, which differed from the terms outlined in the agreement.

14. These changes included fewer resources, reduced staffing, and inadequate support systems.

15. The team of career coaches available to assist over 700 students with their job search was drastically reduced, from 19 to just 2, further exacerbating the lack of support provided to students.

16.     These modifications adversely affected numerous students' experiences and caused detriment to the Plaintiffs who enrolled in this program under its original terms.

17.     The bootcamp encountered staffing shortages that affected the quality of instruction and career support. Plaintiffs reported that they did not receive adequate guidance or assistance during and after their courses. These shortages were cited as a factor in the perceived value of the tuition fees paid.

18.     The Defendants knowingly permitted these misrepresentations to persist while benefiting from the tuition fees, despite not providing the services that were promised.

19.     Defendant APP did not inform students of any changes that the program was undergoing, including the termination of the part-time program.

20.     The rules and structure of the program were repeatedly changed throughout the course, in breach of the agreement, resulting in significant harm to students. These constant alterations caused frustration and left students with unanswered questions and no clear direction.

21.     The job-seeking assistance provided to graduates has been limited, involving sporadic and uncoordinated meetings.

22.    As graduation approached for some students, the Defendants were transitioning to an AI-based learning model, further impacting the quality of education and support provided to students.

23.    Plaintiffs allege that the Defendants' actions misled students about the quality and outcomes of the program, resulting in financial and personal harm.

## BUREAU FOR PRIVATE POSTSECONDARY EDUCATION CITATION: ASSESSMENT OF FINE AND ORDER OF ABATEMENT

24.    On September 29, 2015, the Defendants were cited by the California Bureau for Private Postsecondary Education (BPPE) for failing to get approval from the bureau and operated as a private unlicensed institution.

25.    The citation noted that the Defendants enrolled students, collected funds, and provided education without meeting California's postsecondary institution requirements.

## CLASS ACTION ALLEGATIONS

26.    The Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23.

27.    The proposed Class consists of all persons who enrolled with Defendant APP throughout the United States from January 1, 2015, to the present. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

28.    This action is properly brought as a class action because:

(a)    The proposed Class is so numerous and geographically dispersed throughout the United States that the joinder of all Class Members is impracticable;

(b)    The disposition of Plaintiffs' and proposed Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

(c)    The proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of 3 each proposed Class Member were infringed or violated in the same fashion;

(d)    There are questions of law and fact common to the proposed Class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include but are not limited to:

(i)    Whether Defendants engaged in a fraudulent scheme;

(ii)    Whether Hash Lab LLC d/b/a App Academy and Kush Patel violated 18 U.S.C. § 1962;

(iii)    Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

(iv)    Whether Plaintiffs and Class Members are entitled to an award of treble, punitive damages, attorneys' fees and expenses; and

(v)    Whether, Plaintiffs and Class Members are entitled to equitable relief, and if so, the nature of such relief.

(e)    Plaintiffs' claims are typical of the claims of the members of the proposed Class. Plaintiffs and Class Members have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

(f)    Plaintiffs will fairly and adequately protect the interests of the Class in that he has no interests antagonistic to those of the other Class Members, and Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as counsel;

(g)    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(i)    Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress

individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

(ii)      This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

(iii)      Without a class action, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the proceeds of his wrongful conduct; and

(iv)      Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude class certification.

29.      Defendants and their agents had, or have access to, address information for the Class Members, which may be used for the purpose of providing notice of the class action.

30.      Plaintiffs seek damages and equitable relief on behalf of the Class Members on grounds generally applicable to the entire proposed Class.

## COUNT I - **Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)**

31.    Plaintiffs re-allege and incorporate by reference the above allegations contained in the paragraphs above as if fully set forth herein.

32.    This claim arises under 18 U.S.C. § 1962(c), which provides in relevant I part:

> (c)    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...

33.    At all relevant times, Defendant PATEL was a "person" within the meaning of 18 U.S.C. §1961(3), because he was "capable of holding a legal or beneficial interest in property." Defendant PATEL was associated with Defendant APP and conducted and participated in that enterprise's affairs though a pattern of racketeering activity, as defined by 18 U.S.C. § 1961(5), consisting of numerous and repeated uses of the mails and interstate wire communications to execute a scheme to defraud in violation of 18 U.S.C. § 1962(c).

34.    Defendant APP was created and/or used as a tool to carry out the Scheme and pattern of racketeering activity.

35.    Defendant PATEL has committed or aided and abetted the commission of at least two acts of racketeering activity, i.e., indictable violations

of 18 U.S.C. § § 1341 and 1343, within the past ten years. The multiple acts of racketeering activity that they committed and/or conspired to, or aided and abetted in the commission of, were related to each other, pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity."

36.    Defendant PATEL predicate acts of racketeering within the meaning of 18 U.S.C. §1961(1) include, but are not limited to:

(a)    Mail Fraud: Defendant PATEL violated 18 U.S.C. § 1341, by sending or receiving, or causing to be sent or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the Scheme, which amount to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions. The materials include but are not limited to, letters promoting the Scheme and bearing Defendant PATEL's signature or image; and

(b)    Wire Fraud: Defendant PATEL violated 18 U.S.C. § 1343, by transmitting and receiving, or causing to be transmitted or received, materials by wire for the purpose of executing the Scheme, which amounts to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions. The materials transmitted and/or received include but are not limited to, interstate credit card

transactions, emails promoting the Scheme, and the Main Promotional Video.

37.    Defendant PATEL knowingly and intentionally made these misrepresentations, acts of concealment and failures to disclose. Defendant PATEL either knew or recklessly disregarded that these were material misrepresentations and omissions.

38.    Defendants obtained money and property belonging to Plaintiffs and the Class Members as a result of these violations. Plaintiffs and other Class Members have been injured in their business or property by Defendant PATEL's overt acts of mail and wire fraud.

39.    Plaintiffs and the Class Members have been injured in their property by reason of Defendant PATEL's violations of 18 U.S.C. § 1962. In the absence of Defendant PATEL's violations of 18 U.S.C. § 1962, Plaintiffs and the Class Members would not have incurred these losses.

40.    Plaintiffs' and the Class Members' injuries were directly and proximately caused by Defendant PATEL's racketeering activity.

41.    Defendants knew and intended that Plaintiffs and the Class Members would rely on the Scheme's fraudulent representations and omissions. Defendant PATEL knew and intended the Plaintiffs and the Class Members would pay fees as a result of same.

13

42.     Under the provisions of 18 U.S.C. § 1964(c), Plaintiffs are entitled to bring this action and to recover their treble damages, the costs of bringing this suit and to their reasonable attorneys' fees.

43.     Defendant PATEL is accordingly liable to Plaintiffs and the Class Members for three times their actual damages as proved at trial plus interest and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs, individually and on behalf of all others similarly situated, pray this Court to enter a judgment against the Defendants that:

(a)     Certifies the Class under Rule 23 of the Federal Rules of Civil Procedure, as well as any appropriate subclasses, appointing Plaintiffs as Class Representative, and appointing his attorneys as counsel to represent the Class;

(b)     Awards actual, compensatory, statutory, consequential damages;

(c)     Awards punitive and treble damages;

(d)     Awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendants' ill-gotten gains, to ensure an effective remedy;

(e)    Awards Plaintiffs and Class Members the costs of this action, including reasonable attorneys' fees and expenses and expert fees;

(f)    Enjoins Defendants from continuing to falsely market and advertise, conceal material information from the public, and commit unlawful and unfair business acts and practices; orders Defendants to engage in a corrective notice campaign, and requires Defendants to refund to Plaintiffs and all Class Members the funds paid;

(g)    Awards declaratory relief;

(h)    Awards pre judgment and post judgment interest at the highest rate allowed by law; and

(i)    Grants such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: **March 15, 2025**

[SIGNATURES BELOW]

Respectfully submitted,

**LAW OFFICE OF MICHAEL A. PIZZI, JR., P.A.**
*Co-Counsel for Plaintiffs (Lead Counsel)*
6625 Miami Lakes Drive, Suite 316
Miami Lakes, Florida 33014
Tel: (305) 986-2277; Fax: (305) 777-3802
*mpizzi@pizzilaw.com*
**MICHAEL A. PIZZI, JR., ESQ.** FBN: 79545


*s/ Michael A. Pizzi, Jr.*
**MICHAEL A. PIZZI, JR.**

**FINBERG FIRM PLLC**
*Co-Counsel for Plaintiffs*
Florida Bar No. 1050394
1100 Lee Wagener Blvd #344
Fort Lauderdale, Florida 33315
Tel. (305) 209-5008; Fax (689) 2058800
E-Mail: howard@finbergfirm.com
Secondary E-Mail: info@finbergfirm.com


/s/Hao Li
**HAO LI, ESQ.**


**REINER & REINER, P.A.**
*Co-Counsel for Plaintiffs*
9100 South Dadeland Boulevard, Suite 901
Miami, Florida   33156-7815
Phone: (305) 670-8282; Facsimile: (305) 670-8989
*dpr@reinerslaw.com; eservice@reinerslaw.com*


By:
**DAVID P. REINER, II**; FBN 416400